FLORIDA COTTON OIL COMPANY *vs.* CLYDE STEAMSHIP COMPANY.

SAME *vs.* MAINE COAST COMPANY.

Suffolk. November 12, 1919. — February 3, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Carrier,* Of goods. *Negligence,* Of carrier of goods. *Bill of Lading. Contract,* Validity. *Evidence,* Presumptions and burden of proof.

A through bill of lading for a shipment of cotton seed oil from Florida to Maine by water contained provisions that negligence should not be presumed against the carrier and that the carrier should not be liable for loss of the property "by causes beyond its control . . . or by leakage. . . ." *Held,* that the carrier was not liable for the loss of any part of the shipment through leakage unless such loss was caused by the carrier's negligence, and that the burden of proving such negligence was upon the shipper.

Where goods, shipped by water by a through bill of lading, in the course of the shipment are transferred from one carrier to another, any valid limitation of liability contained in the through bill of lading issued by the first carrier enures to the benefit of the second carrier.

In an action against carriers who, successively, transported the oil from Florida to Maine under the bill of lading above described for damages resulting from the loss of a part of the oil by leakage while in transit, there was evidence tending merely to show that the oil, when delivered to the first carrier, was in new, six hoop, white oak, hand-made barrels, well coopered, made of well seasoned timber and thoroughly tested before being used, and that when the shipment arrived at the port of destination it was short in quantity by reason

of leakage. *Held*, that there was no evidence warranting a finding of negligence on the part of either defendant.

TWO ACTIONS OF CONTRACT OR TORT for the loss of a part of a shipment of cotton seed oil delivered to the defendant in the first action to be transported in barrels under a through bill of lading from Jacksonville in the State of Florida to Machiasport in the State of Maine. Writs dated December 6, 1910, and January 14, 1911.

In the Superior Court the actions were tried together before *Callahan*, J. The material evidence is described in the opinion. At the close of the evidence, the judge ordered verdicts for the defendants; and the plaintiff alleged exceptions.

*D. J. O'Connell*, for the plaintiff.

*D. F. Carpenter*, for the Clyde Steamship Company.

*G. P. Wardner*, for the Maine Coast Company.

BRALEY, J. The plaintiff sues the defendants severally as common carriers in contract or tort to recover for the loss of "four hundred and fifty-eight and 2/15 gallons of cotton seed oil of the value of one hundred seventy-six dollars and thirty-eight cents . . . the same being a part of a shipment of one hundred barrels of oil." A verdict for each defendant having been ordered, the cases are here on the plaintiff's exceptions.

The jury on the evidence would have been warranted in finding the following facts: On September 2, 1908, the plaintiff delivered to the Clyde Steamship Company at Jacksonville, Florida, one hundred barrels of cotton seed oil to be transported under a through bill of lading to Machiasport, Maine, and there delivered to the Machiasport Packing Company, the consignee. The oil was shipped on September 4 and arrived in Boston on September 10, where the barrels were unloaded and transferred to the Maine Coast Company on the day of arrival, which in two shipments, one on September 12, and the other on September 16, forwarded the oil to Machiasport where "it was found that there had been a loss of three thousand four hundred and thirty-six . . . pounds, or four hundred fifty-eight and 2/15 gallons, of the value of thirty-eight and one half cents . . . per gallon, which amounted to one hundred and seventy-six dollars and thirty-eight cents." The oil was received at Jacksonville in barrels which "were new, six hoop, white oak, hand-made barrels, . . . well coopered,

made of well seasoned timber, and were tested" thoroughly before being used.

The defence of the Clyde Steamship Company is, that the un-contradicted evidence shows that when it delivered the shipment to the Maine Coast Company no leakage for which damages are claimed had occurred, and under the eighth clause of the bill of lading, that "No carrier shall be liable for loss or damage not occurring on its portion of the route, nor after said property is ready for delivery to consignee" it is not responsible if any loss thereafter occurred. It also contends that under the exemption clauses, that no carrier shall be liable for damages caused by leak-age, chafing or loss in weight, it is not liable because the plaintiff failed to offer any evidence from which its negligence can be found.

It was said in *Burroughs* v. *Norwich & Worcester Railroad,* 100 Mass. 26, 27, "The law is well settled in this Commonwealth, and in most of the United States, that a corporation established for the transportation of goods for hire between certain points, and receiving goods directed to a more distant place, is not re-sponsible, beyond the end of its own line, as a common carrier, but only as a forwarder, unless it makes a positive agreement extending its liability." See also *Saxon Mills* v. *New York, New Haven, & Hartford Railroad,* 214 Mass. 383; *Hill Manuf. Co.* v. *Boston & Lowell Railroad,* 104 Mass. 122. While the shipment was an interstate shipment, and under the act of Congress of June 29, 1906, (34 U. S. Sts. at Large, 584, c. 3591, amending the interstate commerce act of 1887, 24 U. S. Sts. at Large, 379, c. 104,) commonly called the Carmack amendment, the initial carrier where the shipment is by rail, or partly by rail and partly by water is made liable for a loss upon the line of a connecting carrier even if the property had been received under a bill of lading restricting the initial carrier's liability to loss upon its own line, *Atlantic Coast Line Railroad* v. *Riverside Mills,* 219 U. S. 186, *Galveston, Harrisburg & San Antonio Railway* v. *Wal-lace,* 223 U. S. 481, *Adams Express Co.* v. *Croninger,* 226 U. S. 491, the transportation in the present case having been entirely by water, it remains to determine whether the plaintiff at common law was entitled to go to the jury.

The first and second stipulations among other things provided that negligence should not be presumed against the carrier, and

"No carrier or party in possession of all or any of the property herein described, shall be liable for any loss thereof, or damage thereto, by causes beyond its control . . . or by leakage, breakage, chafing, loss in weight, decay, vermin, changes in weather, heat, frost or wet." "It has long been settled that, while just and reasonable conditions may be imposed limiting his liability as it existed at common law, the carrier cannot be relieved where goods are lost or destroyed during carriage through his own negligence or the negligence of his servants or agents, although in terms the contract of shipment may exonerate him." *P. Garvan, Inc.* v. *New York Central & Hudson River Railroad,* 210 Mass. 275, 278. And a stipulation exempting the carrier from loss by leakage is reasonable. *Cox* v. *Central Vermont Railroad,* 170 Mass. 129, 136. The plaintiff introduced no evidence other than leakage as the proximate cause of the loss.

But even if the jury exonerated the Clyde Steamship Company, and found that the Maine Coast Company received the oil at Boston in the condition claimed by the Clyde Steamship Company, the responsibility of the terminal carrier is the same as that of the initial carrier. The Maine Coast Company nevertheless took the oil under the bill of lading issued by the initial carrier, and any valid limitation therein enures to its own benefit. *P. Garvan, Inc.* v. *New York Central & Hudson River Railroad,* 210 Mass. 275, 278. *Kansas City Southern Railway* v. *Carl,* 227 U. S. 639. It was open to each defendant therefore to rely upon the exemption, and the loss as we have said having resulted from leakage, the plaintiff to recover had the burden of proving that it was caused by the active negligence of the carrier. *Denny* v. *New York Central Railroad,* 13 Gray, 481. *Libby* v. *Gage,* 14 Allen, 261, 263, 265. *School District in Medfield* v. *Boston, Hartford & Erie Railroad,* 102 Mass. 552. *Clark* v. *Barnwell,* 12 How. 272, 280. See 6 Cyc. 522, note 35, for a very full collection of cases. A careful examination of the record having failed to show any evidence which would have warranted the jury in so finding as to either defendant, the exceptions in each case must be overruled.

*So ordered.*