## FIRST NAT. BANK OF CHICAGO v. ROGERS, BROWN & CO.

(District Court, W. D. Washington, N. D. June 6, 1921.)

No. 195-E.

Carriers ⟺83—Telegram held not authority to carrier to deliver.

Where the receiver of a corporation, which purchased oil of the shipper, who had consigned the same to his own order, with directions to notify a soap company on delivery of the oil, wired the soap company that he was doing all possible to locate documents in order to stop demurrage, and suggested that the soap company establish bond to produce documents and unload the car, such telegram was not authority to the carrier to deliver the oil to the soap company without bond, and, having done so, the receiver may recover from the carrier.

In Equity. Suit by the First National Bank of Chicago against Rogers, Brown & Co., a corporation, in which a receiver was appointed. In the matter of the claim of the receiver against the Chicago, Milwaukee & St. Paul Railway Company. Demurrer to answer of Railway Company sustained.

Frank S. Bayley, of Seattle, Wash. (R. E. Capers, of Seattle, Wash., of counsel), for petitioner.

F. M. Dudley, A. J. Laughon, and Geo. W. Korte, all of Seattle, Wash., for Chicago, M. & St. P. Ry. Co.

NETERER, District Judge. Claim is made by the receiver of Rogers, Brown & Co. against Chicago, Milwaukee & St. Paul Railway Company for $9,251.75 damages claimed for wrongful conversion of a car of soya bean oil, K. T. X. No. 561. The oil was purchased by Rogers, Brown & Co. of the Koster Company, who had shipped the oil to its own order to Winnipeg over the named railway, with instructions to notify "Royal Crown Soap, Limited," under an "order bill of lading." Rogers, Brown & Co. purchased the oil, and the bill of lading was indorsed to it, and in due course came into the possession of the receiver. It is alleged that the railroad company delivered the oil without the surrender of the bill of lading to a person other than the receiver, or his order, and refuses to deliver the oil to the receiver after demand made. The railway admits the delivery to it, and by it to Royal Crown Soap, Limited, of the oil, and alleges as an affirmative defense that upon arrival of the oil at destination the railway notified the Royal Crown Soap, Limited, and requested disposition of the car and the production and surrender of the bill of lading. Koster & Co. in turn were notified, who advised that Rogers, Brown & Co. had purchased the draft and bill of lading and was the owner who had been

requested to forward the documents. Thereafter the receiver sent the following wire to the Royal Crown Soap, Limited, at Winnipeg:

"Reference K. T. X. 561. Are doing all possible locate documents in order stop demurrage suggest you establish bond to produce documents and unload car."

It is then alleged that the soap company advised the railway company of the telegram, and the company, "acting and relying upon such telegraphic instructions, permitted the Royal Crown Soap Company, Limited, to unload the car and released the same."

A demurrer is filed to this affirmative answer, upon the ground that it does not state any defense. The railway company predicates its answer upon the decision of the Supreme Court in Pere Marquette R. Co. v. French & Co., 254 U. S. 538, 41 Sup. Ct. 195, 65 L. Ed. ——, decided by the Supreme Court January 17, 1921.

I think this case is clearly distinguished from the Marquette Case, in that in the Marquette Case the bill of lading was in the possession of the person notified and to whom delivery was made, while in the instant case the possession at all times was in the receiver. The telegram can in no sense be construed into an order to deliver. It was merely a suggestion as to how the possession of the oil might be obtained before the receiver was able to locate the necessary documents. There clearly is no suggestion in the telegram which in any sense changed the status of right or obligation resting in the several parties. The loss was occasioned, therefore, not by anything the receiver did or omitted to do, but rather because the railway company delivered the car without the surrender of the bill of lading, or in lieu of the bill of lading a bond holding the railway company harmless, if the bill of lading is not produced. Such was not the fact in the Marquette Case, where the bill of lading was obtained by the deliveree wrongfully from the bank, and the railway company could not be held for a loss based upon wrong to which the railway company was not a party. Such is not the fact in the instant case. A clear statement of the law, which was approved by the Supreme Court is set out in First Nat. Bank v. O. & W. R. R., 25 Idaho, 58, 136 Pac. 798. A reading of the Marquette Case, I think, is clearly in harmony with the contention of the receiver based upon the facts.

The demurrer is therefore sustained.