CITY NATIONAL BANK OF EL PASO, TEXAS, *v.* EL PASO & NORTHEASTERN RAILROAD COMPANY ET AL.

CERTIORARI TO THE COURT OF CIVIL APPEALS, EIGHTH SUPREME JUDICIAL DISTRICT, OF THE STATE OF TEXAS.

No. 309.   Argued March 12, 1923.—Decided June 11, 1923.

Where a bank was accustomed, through an agent, to make interstate shipments of cattle to another bank in care of a commission company, sending its drafts on the commission company for the pur-

chase price, with bill of lading attached, to the consignee bank, with instructions to release the cattle on payment of the drafts, and had ratified delivery of shipments to the commission company before payment of such drafts, and where, on making a further shipment, the direction in care of the commission company was, by mutual mistake of the agent and the receiving carrier, omitted from the bill of lading but at the command of the agent was noted on the way bill, and the terminal carrier delivered the cattle of this shipment to the commission company without surrender of the bill of lading or payment of the draft, and the draft was not paid, *held,* that the terminal carrier had a right to assume that delivery might properly be made to the commission company, and that delivery so made was delivery to the consignee bank; hence the provisions of the Carmack Amendment had no application.

225 S. W. 391, affirmed.

CERTIORARI to a judgment of the Court of Civil Appeals of Texas, affirming a judgment for the respondent railroad companies in an action by the petitioner bank to recover for their alleged failure to make delivery of a shipment of cattle in accordance with a bill of lading issued by the initial carrier.

*Mr. A. H. Culwell* for petitioner.

*Mr. William R. Harr,* with whom *Mr. W. A. Hawkins, Mr. Del W. Harrington* and *Mr. Charles H. Bates* were on the brief, for respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This action was commenced in the District Court of El Paso County by the petitioner to recover $10,101.18 for alleged failure to deliver, in accordance with a shipping contract, 847 head of cattle shipped October 27, 1911, by the petitioner from El Paso, Texas, to Kansas City, Missouri, over the connecting lines of railway of respondents,[1] there to be delivered to the First National Bank of

---

[1] The other respondents are: El Paso & Southwestern Company, El Paso & Northeastern Railway Company, El Paso & Rock Island

that city. Judgment for the respondent was affirmed by the Court of Civil Appeals of the Eighth Supreme Judicial District of Texas (225 S. W. 391). The Supreme Court of the State denied a writ of error. On petitioner's application, asserting that federal rights claimed by it in the state courts under the Carmack Amendment (c. 3591, 34 Stat. 595) are denied by the judgment, the case was brought here on certiorari.

The petitioner declared upon alleged failure of respondents to deliver the cattle to the First National Bank of Kansas City, in accordance with a bill of lading issued by the initial carrier; it alleged the value of the cattle to be $20,000, and claimed $10,101.18 on account of failure by the carriers to deliver the cattle to the consignee named.

The shipment in question was the last of 18 or 20 trainload shipments of cattle by petitioner from El Paso to Kansas City. The record shows that for some time prior to the date of this shipment, one Cameron had been buying cattle in the interior of Mexico and shipping them to Juarez, whence they entered the United States at El Paso. A bank of Chihuahua furnished the money to pay for the cattle. That bank consigned them to petitioner at El Paso, making draft with bill of lading attached, for the amount of the purchase price. After the cattle were delivered to the petitioner on the American side, it paid the draft and refunded the purchase price to the Chihuahua bank. It then shipped the cattle to Kansas City for sale. J. P. Peters was a cattle broker doing business in Kansas City under the name of J. P. Peters Commission Company. His son, J. A. Peters, was employed by Cameron. He also acted for the petitioner, and all of the shipments were handled exclusively by him as its agent. All of the previous shipments were delivered to the commission com-

Railway Company, Chicago, Rock Island & El Paso Railway Company, Chicago, Rock Island & Gulf Railway Company, and Chicago, Rock Island & Pacific Railway Company.

pany upon arrival at Kansas City, and, with the exception of some of the earliest, were shipped by him to the First National Bank of Kansas City "care of the J. P. Peters Commission Company." This practice was adopted because the bank was closed at the time one of the earlier shipments arrived, and the day's market was lost.

At the time of the shipment in question, a bill of lading was issued by the receiving carrier signed by its agent and by the "City National Bank, By J. A. Peters, Shipper." The waybill contemporaneously made designated the consignee "First National Bank, Kansas City, Mo., care J. P. Peters Commission Company. . . ." The petitioner made a draft, with bill of lading attached, on the commission company and forwarded it to the bank at Kansas City, with directions to release the cattle on payment of the draft, and to wire petitioner for instructions, if the draft was not paid. The terminal carrier delivered the cattle to the commission company without surrender of the bill of lading or the payment of the draft. The bank returned the bill of lading and the draft to the petitioner. The draft has never been paid in full, and this action is to recover the amount remaining unpaid. The jury found that, at the time of the execution of the bill of lading, it was agreed between the petitioner, acting through J. A. Peters, and the receiving carrier, that the cattle should be consigned by bill of lading to the First National Bank of Kansas City, Missouri, care of the J. P. Peters Commission Company; that through mutual mistake, the bill of lading omitted the words "care of the J. P. Peters Commission Company," and that the petitioner through its said agent, directed the agent of the receiving carrier to note on the waybill that the cattle were consigned to the First National Bank of Kansas City, care of the J. P. Peters Commission Company. The jury also found that prior shipments of cattle above referred to had been delivered by the terminal carrier to the com-

mission company before the payment of drafts to which the bills of lading were attached, and that the First National Bank acquiesced in and ratified such deliveries; that in reliance on such acquiescence and ratification, the terminal carrier delivered the shipment in question to the commission company without the surrender of the bill of lading, and that such acquiescence or ratification was reasonably sufficient to induce the belief that the commission company was authorized to receive the cattle for the bank.

The petitioner complained that the carrier failed to deliver the cattle to the bank named as consignee or to the petitioner. If delivery was made to that bank, or to the petitioner, or on its order, the carriers did not commit any breach alleged, and there can be no recovery.[2] And if, as in the case of previous shipments, the contract had read " First National Bank of Kansas City, Mo., care of J. P. Peters Commission Company", delivery to the commission company would have been performance of the agreement. See *Ela* v. *American Merchants' Union Express Co.,* 29 Wis. 611, 616; *Bell* v. *Windsor & Annapolis Ry. Co.,* 24 N. S. 521. The bank had ratified the delivery of prior shipments to the commission company before payment of drafts accompanying bills of lading. The terminal carrier had a right to assume that delivery of this shipment properly might be made to the commission company. J. A. Peters acted for the petitioner in making all of the shipments. He directed the prior shipments to be made to the consignee bank in care of the commission company. At his instance the waybill directed delivery of this shipment to the named consignee in care of the commission company. His orders and directions were binding on the petitioner. Thus in legal

---

[2] See decision of this case in Court of Civil Appeals, 225 S. W. 391, 400, holding that the petition alleging failure to deliver to consignee would not support recovery for a delivery without surrender of bill of lading.

effect the petitioner at the time it made the shipment expressly ordered delivery to be made to the consignee bank in care of the commission company, and caused the agent of the receiving carrier to so direct on the way-bill. We think it must be held that, under these circumstances, delivery to the commission company was delivery to the consignee bank.

This being so, the provisions of the Carmack Amendment have no application.

*The judgment of the Court of Civil Appeals is affirmed.*