PHILADELPHIA TAPESTRY MILLS *vs.* NEW ENGLAND
STEAMSHIP COMPANY.

Bristol.   October 28, 1924. — February 24, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Agency*, Existence of relation. *Evidence*, Competency. *Carrier*, Of goods. *Bill of Lading*. *Contract*, Validity, Construction, Performance and breach. *Interstate Commerce*.

A manufacturer in Philadelphia in the State of Pennsylvania sent goods for finishing to a corporation in this Commonwealth, which reshipped them by a steamship company from Fall River to the city of New

York, the bill of lading naming the manufacturer as consignee "care of" a certain truckman at a designated pier in New York, and stating as the "Destination" "Phila State of Pa.," and as the route "FR—c/o" the shipper. The bill of lading also contained a statement that charges were paid to New York. By reason of a strike and a consequent embargo on railroads running out of New York, the truckman inaugurated a plan of having goods sent in his care in New York, so that he could take charge of them, and he would move them forward where practicable, as in the case of shipments destined ultimately for Philadelphia, by water routes. This shipment was made in accordance with that plan. The shipper had an agent in New York at the time. The goods were delivered in New York by order of the shipper's representative to the truckman for the purpose of reshipment. They never were delivered to the manufacturer in Philadelphia. In an action by the manufacturer against the initial carrier, it was *held,* that

(1) Evidence of a conference between the truckman and the shipper which resulted in the arrangement under which the shipment was made was admissible, the shipper being the plaintiff's agent in the transaction;

(2) Where goods are shipped to a consignee in the care of another person, that person has the right to receive the goods and he becomes the proper person to whom the carrier may make delivery;

(3) Delivery properly was made to the truckman;

(4) The mention of Philadelphia as the destination in the bill of lading did not control the express designation of the consignee as being in New York;

(5) In the circumstances, the interstate commerce act and the Carmack and other amendments had no relevancy;

(6) The interstate commerce act and its amendments do not apply to carriage wholly by water where no railroad is involved;

(7) No common law liability of the defendant was shown.

CONTRACT, against the defendant as a common carrier, for goods lost in transit. Writ dated February 8, 1921.

In the Superior Court, the action was heard by *Sisk,* J., without a jury. Material evidence and findings by the judge are described in the opinion. There was a finding for the defendant. The plaintiff alleged exceptions.

*A. S. Phillips,* for the plaintiff.

*A. W. Blackman,* for the defendant.

RUGG, C.J. This is an action of contract to recover the value of merchandise transported by the defendant as common carrier. Undisputed facts are that the plaintiff sent the merchandise in question to the Mt. Hope Finishing Company at North Dighton in this Commonwealth, to be finished. That company, after doing its work, reshipped it from Fall

River in this Commonwealth by the defendant under a bill of lading issued by the defendant at Fall River. That bill of lading contained on the line marked "Consigned to" the words, " Wasserman Bros c/o S A Mangam Pier 14 NR.NY." On the next line, marked "Destination," appeared, "Phila State of Pa." On the next line, marked "Route," was " FR- c/o Mt Hope Fin. Co." The symbol "c/o" means "care of." The bill of lading bore under the printed heading, "If charges are to be prepaid, write or stamp here, 'To be Prepaid,' " the written words, "Paid to NY" In the lower left hand corner was this:

> "MOUNT HOPE } Shipper.
> FINISHING CO., } Per O"

The letter "O" was an abbreviation for the name of the employee of the shipper who had charge of this shipment. Further facts are that at the time of this shipment there was a strike on the railroads. Consequently there was an embargo on the railroads out of New York and great delay in forwarding freight. The regular lines over which the defendant maintained through route connections and forwarded its interstate shipments to Philadelphia were the Pennsylvania Railroad or the Reading Railroad, whereby the cheapest rate was obtained. On a through shipment neither the consignee nor anybody else outside the carrier had anything to do with the goods in New York City. By reason of the strike S. A. Mangam, in the trucking business in New York, visited the Mt. Hope Finishing Company among many other shippers in New England and outlined a plan to get by the embargo, by having goods sent in his care in New York, so that he could take charge of them, and he would move them forward where practicable, as in the case of shipments destined ultimately for Philadelphia, by water routes. The Mt. Hope Finishing Company at that time had an agent in New York named Smith. Pursuant to this plan, the shipment in question was made. When it reached New York, Smith, as the representative of the Mt. Hope Finishing Company, instructed Mangam to reship the goods to Philadelphia by New York and Baltimore Inland Transportation Company. Mangam signed an order at the top of which was printed,

"Mount Hope Finishing Co., Delivery Memorandum for truckmans record only." At the right of the signature of Mangam appeared in writing, " Del. 7 / 14 F L Smith." A carbon copy of this was left with Mangam, which he presented to the agent of the defendant and obtained the freight bill. He loaded the merchandise thus obtained on one of his trucks and reshipped it as instructed by Smith. When that was completed, he turned the papers over to Smith and took Smith's receipt therefor.

The evidence as to Mangam's conference and engagements with the Mt. Hope Finishing Company was competent. That company was the consignor. It was both by intendment of law and according to the evidence the agent of the plaintiff for reshipping its merchandise after having performed work on such merchandise. Whatever arrangement that company made with the carrier was binding on the plaintiff and consignee. *Johnson* v. *New York, New Haven & Hartford Railroad,* 217 Mass. 203, 208. *Great Northern Railway* v. *O'Connor,* 232 U. S. 508.

Where goods are shipped to a consignee in the care of another person, that person has the right to receive the goods and he becomes the proper person to whom the carrier may make delivery. *City National Bank of El Paso* v. *El Paso & Northeastern Railroad,* 262 U. S. 695. *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 572.

According to the terms of this bill of lading, the defendant as carrier rightly could make delivery to Mangam at Pier 14, New York. In truth, the shipment in question was directed to Wasserman Bros. in care of both Mangam and the Mt. Hope Finishing Company. Delivery apparently was made to both in New York. The mention of Philadelphia as the destination in the bill of lading does not control the express designation of the consignee as being in New York. It does not prevent a delivery by the carrier to such consignee from exonerating the carrier from all liability.

Since there has been delivery by the defendant as carrier in New York to a person designated in the bill of lading and authorized to receive the merchandise, the interstate commerce act and the Carmack and other amendments, 24 U. S.

Sts. at Large, 379, 38 U. S. Sts. at Large, 1196, 39 U. S. Sts. at Large, 441, 41 U. S. Sts. at Large, 494, have no relevancy to the case. *City National Bank of El Paso* v. *El Paso & Northeastern Railroad,* 262 U. S. 695, 700.

The defendant is not liable on another ground. If this be treated as a through bill of lading requiring through shipment from Fall River to Philadelphia, there is no designation of carrier· beyond New York. The transportation of the goods in fact appears to have been wholly by water, except so far as the truck of Mangam carried the goods from the defendant to another carrier by water in New York. It has been the uniform interpretation of the interstate commerce law and its amendments that it does not apply to carriage wholly by water, where no railroad is involved. *In re Jurisdiction over Water Carriers,* 15 I.C.C. 205. *Cosmopolitan Shipping Co.* v. *Hamburg-American Packet Co.* 13 I.C.C. 266. *Goodrich Transit Co.* v. *Interstate Commerce Commission,* 190 Fed. Rep. 943, reversed on another ground in *Interstate Commerce Commission* v. *Goodrich Transit Co.* 224 U. S. 194. That law was aimed at railroads and their connecting and connected carriers by water. *Texas & Pacific Railway* v. *Interstate Commerce Commission,* 162 U. S. 197, 210. No common law liability has been shown on this record against the defendant. *Nutting* v. *Connecticut River Railroad,* 1 Gray, 502. *Burroughs* v. *Norwich & Worcester Railroad,* 100 Mass. 26, 27. *Florida Cotton Oil Co.* v. *Clyde Steamship Co.* 235 Mass. 10.

It is not necessary to examine in detail the requests for rulings. So far as not given, they rightly were denied in view of the facts found and the controlling principles of law.

*Exceptions overruled.*