## FLEMING v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS et al. (No. 2204.)

Court of Civil Appeals of Texas. El Paso.
Jan. 24, 1929.

McGown & McGown and L. B. Otey, all of Fort Worth, for appellant.

Thompson & Barwise and Bryan, Stone, Wade & Agerton, all of Fort Worth, for appellees.

WALTHALL, J. Charles E. Fleming, appellant herein, brought this suit against the St. Louis Southwestern Railway Company of Texas, hereinafter referred to as railway company, to recover damages for the conversion of a carload of potatoes.

Plaintiff's cause of action, briefly stated, is in substance as follows: Ben Weil purchased from the A. M. Penny & Co., a carload of potatoes to be delivered to him or his order in Fort Worth, Tex., for the sum of $498.60, to be paid to the Guaranty Bank & Trust Company of Alexandria, La., upon receipt of shipper's order bill of lading covering said car of potatoes. Omitting dates, the A. M. Penny & Co. drew its draft on the Guaranty Bank & Trust Company for said amount, and attached the bill of lading thereto, which draft was paid by Ben Weil, and the bill of lading was delivered to him.

It is alleged that the said railway company agreed to transport said car of potatoes from Shell Lake, Wis., to Fort Worth, Tex., and deliver same to Ben Weil or his order, and that it did not deliver same to Ben Weil or his order, but did wrongfully deliver same to Harkrider-Keith-Cooke Company, to his damage, $450.

It is alleged that Ben Weil was adjudged a bankrupt in Louisiana, and that plaintiff, Fleming, purchased this claim of $450 upon which he sues from the Trustee in Bankruptcy.

The defendant railway company answered, in substance, that immediately prior to the delivery of the car of potatoes to Harkrider-Keith-Cooke Company, Ben Weil, the consignee, entered into an agreement with Harkrider-Keith-Cooke Company whereby it was agreed between them that the Harkrider-Keith-Cooke Company was to pay the freight charges on the car of potatoes and have the said railway company deliver the potatoes to that company, and that said company was to recondition the unclassified potatoes, cull out all inferior ones, and pay to Ben Weil, the consignee, a specified sum for all potatoes of a certain grade and a reasonable market price for all other potatoes in said car. It is al-

leged that plaintiff was the assignee of Ben Weil, and was not an innocent purchaser of the claim; that Ben Weil had obligated himself to pay the freight charges amounting to $370.80; that the market value of the potatoes in Fort Worth at the date of the alleged conversion was $656.50, and, after deducting the freight charges, a balance of $285.30 would be left, which amount, it was alleged, had been paid to Ben Weil by Harkrider-Keith-Cooke Company. The railway company impleaded the Harkrider-Keith-Cooke Company, and alleged that said company had indemnified it in the matter of the delivery of the potatoes to it, in the absence of the surrender of the bill of lading, and prayed judgment against that company in the event plaintiff recovered judgment against it.

Harkrider-Keith-Cooke Company intervened and pleaded, in substance, as did the railway company as to the indemnity, the agreement it had with Ben Weil as to payment of the freight charges, and the delivery of the potatoes to it, and the payment to Ben Weil of the amount due. It further alleged as reason for its intervention that Ben Weil was indebted to it, that he was a nonresident, insolvent, and bankrupt; and further pleaded, as did the railway company, that plaintiff was an assignee of Ben Weil, and set up its equities and defenses, that the railway company might recover of it on the indemnity bond, and that intervener might be denied its equities and offsets because of the nonresidence of Ben Weil and his insolvency.

Plaintiff in reply pleaded a misjoinder of parties defendant, suggesting that Harkrider-Keith-Cooke Company was neither a necessary nor a proper party to his suit against the railway company; and presented a number of special exceptions to the answer of the railway company and to the answer of the intervener based on the contention that Harkrider-Keith-Cooke Company was neither a necessary nor a proper party in the suit, and that the matters pleaded by them were not proper defensive matters against his cause of action. The trial court overruled his plea and exceptions, to which he duly excepted.

Trial was had before a jury. On special issues submitted the jury found:

(1) The railway company did not convert the car of potatoes in question.

(2) Conditional, and no answer.

(3) There was an agreement between Ben Weil and Ben Keith, president of the Harkrider-Keith-Cooke Company (stating date), whereby Ben Weil would release to the Harkrider-Keith-Cooke Company the car of potatoes upon said company paying the freight charges.

(4) Conditional and no answer.

(5) There was an agreement between Ben Weil and Ben Keith whereby Harkrider-Keith-Cooke Company was to take said car of potatoes, and that the market value thereof would be applied to Ben Weil's account with the Harkrider-Keith-Cooke Company.

(6) The amount of $285.70 was so credited.

(7) Ben Weil has been paid the market value of the car of potatoes in question.

(8) Conditional and no answer.

On the verdict, judgment was entered that plaintiff take nothing by his suit against the railway company, and that the railway company take nothing against the intervener.

Plaintiff prosecutes this appeal.

## Opinion.

Appellant does not not question the sufficiency of the evidence to sustain the facts found by the jury.

Appellant pleaded a misjoinder of parties defendant, as stated, and several special exceptions to the petition in intervention on the ground that it appears upon the face of the petition that Harkrider-Keith-Cooke Company is not a necessary or proper party in the suit; that there is no privity of obligation, or contract, or of interest between plaintiff in the cause pleaded by him and the matters pleaded in the intervention; that the ground set up for the intervention is for the purpose of setting up a purported contract wholly distinct from the cause of action declared upon; that plaintiff's petition does not seek any relief against Harkrider-Keith-Cooke Company; and that the matters pleaded by it are not properly the pleadings of an intervener, and are not in answer to any matters and things alleged in his petition.

Appellant presents his fourteen propositions practically on the matters suggested in the above and similar exceptions, to the effect that, where a carrier in possession of freight consigned to the owner (A. M. Penny Company), shipper's order, notify purchaser (Ben Weil), delivers the freight to a third person without surrender of written order of owner, it is guilty of conversion, and is liable to the owner for the value of the freight; that, under the circumstances stated, a third party, to whom freight was delivered without surrender of the bill of lading, is not a proper or necessary party, and may not be brought into the suit over objection of the plaintiff.

We think, in view of the answers of the railway company and Harkrider-Keith-Cooke Company, the exceptions stated and the propositions stated, the whole matter of appellant's contention is sufficiently shown, and may be discussed together without discussing each of the propositions severally. In view of some of the expressions in the exceptions and the propositions, we here state briefly some of the undisputed facts as shown by the correspondence found in the record.

In October or December of 1924, Harkrider-Keith-Cooke Company bought five cars of potatoes of certain specified grades from Ben Weil. The car of potatoes alleged by plain-

tiff to have been converted by the defendant railway company was one of these cars. Upon the arrival of this car of potatoes in Fort Worth, Tex., Ben Keith, president of Harkrider-Keith-Cooke Company, inspected said car of potatoes, and determined that they did not come up to specifications, or rather did not comply with the class of potatoes purchased from Weil. This was on the 21st day of February, 1925. Ben Weil was present in the office of Harkrider-Keith-Cooke Company at the time Ben Keith made the inspection of the potatoes, and agreed that they were not of the class and kind he had sold to the Harkrider-Keith-Cooke Company. At that time Ben Weil was the consignee and owner of said car of potatoes. Weil then and there agreed with Harkrider-Keith-Cooke Company that this particular car of potatoes was to be released to Harkrider-Keith-Cooke Company upon the payment of freight by said company to the carrier, and that said car of potatoes was to be reconditioned by the Harkrider-Keith-Cooke Company, and, upon being reconditioned, said company was to pay Weil the contract price for the potatoes found up to specifications and the reasonable market price for all other potatoes therein. Thereupon, in the presence of Mr. Weil, Ben Keith phoned the defendant railway company, and instructed them to divert the car to Dallas, and that he had authority from the owner of the car to take possession of same. Mr. Weil made no objections at that time, but agreed with Mr. Keith that the potatoes were to be delivered by the carrier to the Harkrider-Keith-Cooke Company. Mr. Weil did not have possession of the bill of lading at that time, but agreed with Mr. Keith that, immediately upon his return to Alexandria, La., he would get the bill of lading, and would surrender same on the following Monday morning. February 21, 1925, was on Saturday. On the morning of the 23d of February, the defendant railway company diverted said car of potatoes to Harkrider-Keith-Cooke Company at Dallas, Tex. Harkrider-Keith-Cooke Company paid the freight, amounting to $370.80. It also reclassified the potatoes according to the agreement with Mr. Weil, and credited his account with $285.70, the proceeds from said potatoes according to the agreement. Although Mr. Weil had promised, if possible, to get possession of the bill of lading on Sunday, February 22d, Mr. Keith did not hear from him, and at 2:45 in the afternoon of the 23d, after the car had already been diverted to Harkrider-Keith-Cooke Company at Dallas, Mr. Keith sent Mr. Weil the following wire:

"Wire Cotton Belt agent or ourselves release Pacific two two nineteen seven."

In reply to this wire, Mr. Weil wired Harkrider-Keith-Cooke Company on the afternoon of February 23d, as follows:

"Cotton Belt Fort Worth has instructions deliver on my order Pacific two two nineteen seven B/lading surrendered here.

Both appellees pleaded the agreement that Harkrider-Keith-Cooke Company had with Ben Weil, and that delivery of the car of potatoes without the bill of lading, was made with authority of Ben Weil.

We have concluded, under the undisputed facts, that there was not a misjoinder of parties defendant, and that the Harkrider-Keith-Cooke Company was a proper party in the case, and could properly intervene and set up its defenses against liability on its indemnity bond to the railway company. Had the railway company been held liable for delivering the car of potatoes to the Harkrider-Keith-Cooke Company on the ground that it did not have the bill of lading, and was not entitled to it, the railway company would have an independent cause of action against the Harkrider-Keith-Cooke Company on the indemnity bond. Such being the case, we see no reason why the railway company should not implead that company, or that company intervene, as Judge Brown says in Skipwith v. Hurt, 94 Tex. 322, 332, 60 S. W. 423 (425 first column), "so as to settle the rights of all the parties in one suit."

The Harkrider-Keith-Cooke Company admitted its liability on its indemnity in the event the railway company would be held liable. In Boyer & Lucas v. St. Louis, S. F. & T. Ry. Co. (Tex. Civ. App.) 72 S. W. 1038, in a suit to recover damages occasioned by the construction of the road, the defendant alleged in its answer that certain parties had agreed to save it harmless from all such claims, and prayed that they be made parties defendant; it was held that it was proper to permit the indemnifiers to appear in the suit, where they admitted their liability under the agreement.

In City National Bank of El Paso v. El Paso & N. E. Ry. Co., 225 S. W. 391, this court, speaking through Judge Higgins, held that it was not necessary that a bill of lading be surrendered, where the carrier delivers to one lawfully entitled to the possession of the goods. That case was carried to the United States Supreme Court, and the holding there sustained. 262 U. S. 695, 43 S. Ct. 640, 67 L. Ed. 1184. We refer to that case without a further review of it.

In Pere Marquette Railway Co. v. French & Co., 254 U. S. 538, 41 S. Ct. 195, 65 L. Ed. 391, it is said:

"But where delivery is made to a person who has the bill or who has authority from the holder of it, and the cause of the shipper's loss is not the failure to require surrender of the bill but the improper acquisition of it by the deliveree or his * * * subsequent conduct, the mere technical failure to require presentation and surrender of the bill will not make the delivery a conversion."

There is no question but that Ben Weil was the owner of the car of potatoes.

Appellant alleges that he was the owner of the car of potatoes, and brought this suit upon the theory that he was assignee or purchaser of the claim from the trustee in bankruptcy and had the same rights against the defendant railway company that Ben Weil had. His claim was subject to the same defenses as could be urged against Weil.

We have reviewed all propositions not discussed, and, believing they present no reversible error, they are overruled.

Finding no reversible error, the case is affirmed.