## ERSKINE WILLIAMS LUMBER CO., Inc., v. JOHN I. HAY & CO., Inc., et al.
### No. 14798.

Court of Appeal of Louisiana. Orleans.

April 15, 1935.

Porteous, Johnson & Humphrey and F. Carter Johnson, Jr., all of New Orleans, for appellant Erskine Williams Lumber Co., Inc.

Lemle, Moreno & Lemle, of New Orleans, for appellant Illinois Cent. R. Co.

Hopkins & Talbot and Jas. W. Hopkins, all of New Orleans, for appellee John I. Hay & Co., Inc.

JANVIER, Judge.

Erskine Williams Lumber Company, Inc., sues John I. Hay & Co., Inc., and Illinois Central Railroad Company, seeking solidary judgment in the sum of $1,824.50, alleging loss of the value of two cars of lumber because of the misdelivery thereof by the railroad company to Hay & Co. The Illinois Central Railroad Company denies that there was a misdelivery, and avers that, so far as its officials and employees could ascertain, John I. Hay & Co. was legally entitled to the delivery of the lumber. ' The railroad company also charges that the plaintiff company is estopped to claim that there was a misdelivery. In the alternative, and in the event that it should appear that the lumber should not have been delivered to Hay & Co., the railroad company, through a call in warranty, charges Hay & Co. with responsibility for the said delivery through misrepresentation, and seeks judgment as warranty against that company for such amount as it may be compelled to pay to plaintiff. Hay & Co. denies all liability, contending that the delivery was properly made in accordance with the well-established custom existing between the plaintiff company and Hay & Co. It also pleads the prescription of one year, alleging that if there is any liability it results from tort.

The evidence shows that for some time the Williams Company had been selling lumber for export to J. F. McIntyre & Co., and that the lumber, in all instances, had been shipped by the Williams Company, plaintiff, from interior points of origin under what are known as "straight," or nonnegotiable bills of lading, and that all such shipments had been consigned from the Williams Company to itself, "C/O John I. Hay & Company," at New Orleans. In all previous cases the shipments had been delivered to and accepted by John I. Hay & Co. and had been delivered by that company on the order of the McIntyre Company. The said McIntyre Company had, on each previous instance, then shipped the lumber to the foreign purchaser, and, as payment to the Williams Company, had sent to that company a draft on the foreign purchaser for the price, and had attached to the draft the negotiable foreign, or ocean, bill of lading. In each prior case the Williams Company had found no fault with this method of handling, and Hay & Co. contends that the two cars involved here were handled in that same manner.

The matter was tried in Division E of the civil district court for the parish of Orleans, and judgment was rendered for the two defendants; the suit of plaintiff being dismissed at its cost. The plaintiff appealed from the judgment dismissing the suit, and the railroad company also appealed because of the fact that necessarily its call in warranty had also been dismissed and it felt that it would be necessary to protect itself by an appeal from that part of the judgment which dismissed its call in warranty, in the event of a reversal of the judgment on the main demand of the Williams Company.

There were two shipments involved in this matter, both having originated in the state of Arkansas.

It is well recognized that the legal rights of parties growing out of interstate shipments are governed by the statutes of the United States and the decisions of the federal courts with reference thereto. See Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Cincinnati, N. O. & Tex. Pac. Ry. Co. v. Rankin, 241 U. S. 319, 36 S. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265; American Railway Express Co. v. Levee, 263 U. S. 19, 44 S. Ct. 11, 68 L. Ed. 140.

The two carloads of lumber were shipped under what is known as "straight" or nonnegotiable bills of lading. They were consigned to "Erskine Williams Lumber Company, C/O John I. Hay & Company," at New Orleans. When they arrived at New Orleans they were delivered on the order of John I. Hay & Co.

There can be no question that rights arising out of straight or nonnegotiable bills of lading are essentially different from those arising from "shipper's order," or negotiable bills of lading.

Under the Federal Bill of Lading Act (section 1 et seq. [USCA, title 49, c. 4, § 81 et seq.]) a "straight" bill of lading is defined as "a bill in which it is stated that the goods are consigned or destined to a specified person." Section 2 (49 USCA § 82). The shipments here were consigned to a specified definite "person," and the bills of lading were, therefore, "straight" bills, as above defined. On the face of the bills themselves also appeared the designation: "Uniform Straight Bill of Lading Original—Not Negotiable."

The federal bill of lading act heretofore referred to provides that where goods are shipped under a straight bill of lading delivery may be made to the consignee named in the bill. It was therefore not necessary that

the carrier require the surrender of the bills of lading before delivery of the shipments. This rule has been recognized in the state of Louisiana as well as in the federal courts. See Terracina v. Yazoo & M. V. R. Co. (La. App.) 152 So. 771. In fact, the rule is recognized universally in all jurisdictions in this country. In Edelstone v. Schimmel, 233 Mass. 45, 123 N. E. 333, 334, the court said:

"It is the general rule that a nonnegotiable contract of shipment by a common carrier is discharged by delivery to the consignee without the surrender or production of the bill of lading."

In St. John Bros. Co. v. Falkson, 237 Mass. 399, 130 N. E. 51, 53, appears the following:

"The delivery of the nonnegotiable bill of lading by the plaintiff to the defendant and its retention by the latter is not conclusive. Possession of such a bill of lading is not of much significance as to the title of the property.

"The carrier rightly could deliver to the consignee and discharge its liability without surrender of such a bill of lading."

In Utley v. Lehigh Valley R. Co., 292 Pa. 251, 141 A. 53, we find it stated that:

"The carrier, on such bill, may deliver on the order of the consignee, and it is under no duty to the latter or the consignor to demand the bill of lading. * * * A carrier is protected in delivering goods to a consignee without the bill of lading; so would it be on his order."

See, also, McCoy v. American Express Co., 253 N. Y. 477, 171 N. E. 749; Gubelman v. Panama R. Co., 192 App. Div. 165, 182 N. Y. S. 403; Stacey-Vorwerk Co. v. Buck, 42 Wyo. 136, 291 P. 809.

■■ But it is contended that the goods in question here were not delivered to the consignee, but were delivered to, or on the order of, John I. Hay & Co., and that the consignee was the Erskine Williams Company, "C/O" John I. Hay & Co.

But it is equally well settled that where, in a straight bill of lading, consignment is made to a named consignee in the care of some other person, firm or corporation, a delivery made to that other person, firm, or corporation will fully discharge the carrier's obligation. The rule has been stated clearly in the matter of Commonwealth v. People's Express Co., 201 Mass. 564, 88 N. E. 420, 423, 131 Am. St. Rep. 416, in the following language:

"The addressing of a package to a consignee in the care of a third person, as between the consignor and consignee and the carrier, and as to the liability of the latter, and in the absence of known limitations upon the scope of the authority given (see Claflin v. Boston & Lowell R. Co., 89 Mass. [7 Allen] 341), confers upon such third person the right to receive the goods, and ordinarily constitutes him the proper person to whom to make delivery (Russell v. Livingston, 16 N. Y. [515] 516; Chicago & N. W. R. Co. v. Merrill, 48 Ill. 425; Ela v. American Merchants' Union Exp. Co., 29 Wis. 611, 9 Am. Rep. 619)."

This rule has been followed in numerous cases, but we find it unnecessary to cite all of them, for the reason that recently the Supreme Court of the United States passed squarely upon the matter and set at rest any possible doubt which may have lingered up to that time. In that case, City National Bank of El Paso v. El Paso & N. E. R. Co., 262 U. S. 695, 43 S. Ct. 640, 67 L. Ed. 1184, the court held that a delivery made to the "person" in whose care the consignee is addressed is a proper delivery under a "straight" bill of lading.

■■ Counsel for plaintiff seek to avoid the effect of these decisions by calling attention to the fact that in the instant case the words "C/O John I. Hay & Company" appear in the bills of lading in blank spaces under the printed words "mail or street address of the consignee—for purpose of notification only." They argue from this that the bills of lading themselves provide that delivery must be made only to the consignee and that the use of the words and symbols "C/O John I. Hay & Company" is merely to facilitate the giving of notice of arrival to the Williams Company.

But we cannot agree with this contention. The purpose of stating in the bill of lading that the address is given for the purpose of notification only was to avoid the possibility of the contention that delivery of the goods themselves should be made at that address. In other words, the carrier, in such cases, seeks to avoid the possibility of being required to make delivery by truck or otherwise at a point in the city of destination at which there may be no side or switch track. Furthermore, the form of bill of lading used is that approved by the Interstate Commerce Commission, and the printed words, "mail or street address of the consignee—for purpose of notification only," appear in all such forms and were present in the bills of lading which were involved in the cases to which we have referred. Furthermore, so far as the railroad company is concerned, the evidence shows conclusively that the Hay Company was entitled to the delivery of these two ship-

ments; that they moved under conditions exactly similar to those which had surrounded previous shipments; and that there was nothing whatever to call the attention of the delivering carrier to any change which may have taken place in the relations between the shipper, the Erskine Williams Company, and the McIntyre Company. The evidence and the law applicable make impossible any other conclusion than that the shipments were properly delivered by the railroad company on the order of John I. Hay & Co., and that all responsibility of the railroad company to the owner of the goods terminated with that delivery.

Nor is the situation different in so far as the Hay Company is concerned. The Erskine Williams Company had established the custom of selling lumber to the McIntyre Company by shipping it under a straight bill of lading consigned to itself at New Orleans and by permitting the McIntyre Company to secure delivery of it from the Hay Company by giving the Hay Company instructions as to delivery on the river front in New Orleans. The Hay Company had no knowledge of any conditions different in this case from those which had existed in all previous cases. The evidence shows conclusively that the lumber was sold to the McIntyre Company, that the Williams Company looked to it for payment, and that it was upon the faith of its belief that the McIntyre Company would ultimately forward to it the proper shipping documents and the proper draft that the lumber was permitted to pass into the possession of the McIntyre Company, and that there was created in it the physical ability to dispose of the lumber without accounting therefor to the Williams Company. In fact, the evidence shows that for some time the Williams Company communicated with the McIntyre Company in an effort to obtain the shipping documents on these two cars of lumber. It did not complain to the Hay Company that the lumber had been delivered to the McIntyre Company, but it merely communicated with the latter company in an effort to secure from it settlement for the lumber which it, the Williams Company, knew had already been delivered to the McIntyre Company.

We find nothing whatever in this case to indicate any error in the decision of our brother below.

So far as the appeal of the railroad company is concerned, it is an unfortunate fact that it was necessary for it to take its appeal to protect any possible contingent liability, but there is no escape for it from the obligation of paying the costs of its appeal.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of plaintiff; costs of appeal taken by Illinois Central Railroad Company to be paid by it.

Judgment affirmed.