## STANLEY v. FOOTE, ET AL.

ATTACHMENT—GARNISHMENT—INTERVENTION—COSTS.

1.   A claimant to money garnished, or property attached in an action between other parties, cannot intervene in the action for the purpose of having his rights thereto determined.

2.   Where a claimant to money attached in an action between other parties filed a petition of intervention, and the matter was tried and judgment for costs rendered against the intervenor, *Held*, that the judgment was proper, as the intervention was unauthorized, but the judgment should have followed a dismissal of the petition; and that no judgment should have been rendered attempting to adjudicate the claimant's rights to the money attached.

[Decided February 28, 1901.]

ERROR to the District Court, Johnson County, HON. JOSEPH L. STOTTS, Judge.

Robert Foote sued J. M. Stanley and caused an attachment to issue. Certain parties were summoned as garnishees in said action, and answered, showing that they were indebted to the defendant. J. S. Stanley filed a petition of intervention, claiming that the indebtedness was to him instead of the defendant. The matter was tried, and judgment was rendered against the intervenor. He prosecuted error. The other facts are fully stated in the opinion.

*Alvin Bennett* and *E. E. Enterline* for plaintiff in error.

*G. E. A. Moeller*, for defendant in error.

KNIGHT, JUSTICE.

On September 9, 1898, defendant in error, Robert Foote, commenced an action against defendant in error, J. M. Stanley, upon a promissory note, and secured a writ of attachment and order of garnishment upon the ground that "said defendant is about to convert his

property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors."

On September 19, 1898, J. M. Stanley, as defendant in the aforesaid .action, filed his answer; first, admitting execution and delivery of note sued; second, denying payment as indorsed thereon; third, pleading statute of limitations; and thereafter a reply was filed denying. the claim that statute of limitations had run. On September 20, 1898, upon an application made, an order of court was entered allowing J. S. Stanley to become a party to said action for the purpose of having his interest in the property involved therein determined; and he was given until October 15, 1898, to file his petition of intervention. On October 11, 1898, said J. S. Stanley, the plaintiff in error, filed his petition of intervention, alleging ownership of all property attached, and the proceeds thereof, $665, held by garnishee (a part not yet due), the same being the proceeds of the sale of said property. On November 15, 1898, the garnishee answered that he was indebted to the defendant, J. M. Stanley, as found by the court on the same day.

On November 15, 1898, upon an examination of garnishee being had, the court, after hearing the evidence presented, finds that the garnishee, J. A. Sonnamaker, is indebted to J. M. Stanley in the sum of six hundred and sixty-five dollars; that of said amount the sum of $100 is due, and of the remainder, a part will be due upon the delivery of the S. T. brand; and the remainder in one and two years from August, 1898, and rendered judgment that said garnishee pay the $100 found due, to the clerk of the court, subject to the order of the court, and be held for further answer.

On the 16th day of November, 1898, J. M. Stanley, by his testimony, presented to the court his motion to dissolve the attachment, and the record shows that evidence was adduced, and the court being fully advised in the premises, denies said motion, to which ruling defend-

ant, J. M. Stanley, by his counsel, excepted. Then follows in the record this statement:

"This cause coming on further to be heard before the court, without the intervention of a jury, a jury herein having been expressly waived and the court having heard the evidence adduced, the argument of counsel, and being fully advised in the premises, doth find that the defendant, J. M. Stanley, is indebted to the plaintiff, Robert Foote, upon the note sued upon in the sum of $199.83, with interest at one and one half per cent per month from December 27, 1890, less a payment of $3.75 on June 3, 1896, and also in the further sum of 10 per cent for attorney's fees as provided for in said note.

"It is therefore adjudged, ordered, and decreed that the said plaintiff, Robert Foote, do have and recover judgment of and from the said defendant, J. M. Stanley, the sum of $478.21, and the further sum of $47.82, as attorney's fees and his costs herein expended, taxed at $12.90. To which finding of the court the defendant, by his counsel, now and here excepts."

Subsequently, on the 3d day of May, 1899, Robert Foote, the plaintiff, in the proceedings above set forth, without objection of record, filed his amended answer to the petition of J. S. Stanley, the intervenor, as follows:

"Comes now Robert Foote, plaintiff herein, and for his answer to the petition in intervention of J. S. Stanley, says :

"First Defense : That he denies each and every allegation in said petition of intervention contained.

"Second Defense : And for a second and further defense to the petition of intervention of said J. S. Stanley, plaintiff says :

"First : That at the time of incurring the indebtedness on which this action is based, and for which plaintiff has obtained judgment against the defendant, J. M. Stanley, and for a long time prior thereto, the defendant, J. M. Stanley, was the legal owner of the brand

22

known as S. T. brand, and was also the owner of several hundred head of horses in said brand, all being in Johnson County, Wyoming, and by and with the knowledge, consent, and acquiescence of said J. S. Stanley, who was at all times herein stated a resident of said Johnson County, Wyoming, represented to plaintiff that he was the owner of said property, and held himself out to the public generally as such owner, and by reason of his said ownership and representations of ownership so made by said defendant, the plaintiff sold goods, wares, and merchandise to the said defendant, J. M. Stanley, for which the note on which plaintiff's action is based, was subsequently given, said plaintiff extending said credit on the representations so made by said defendant; that during all of said time up to and including the year 1898, said defendant, J. M. Stanley, by and with the consent, knowledge, and acquiescence of said J. S. Stanley, had possession of all said live stock, and held himself out to the plaintiff and the public generally as the owner thereof, making sales of portion of said live stock in his own name from time to time, and at the time of the commencement of this suit said defendant, J. M. Stanley, for the purpose of defrauding his creditors had just contracted the sale of his entire herd of horses to John Smith and J. A. Sonnamaker, and already delivered 74 head of said horses, and that the money and credits now claimed by said J. S. Stanley represent the proceeds from the sale of said live stock; that all of the said actions of the said defendant, J. M. Stanley, were had and done by and with the consent, connivance, knowledge, and acquiescence of the said J. S. Stanley, and that by reason of the facts aforesaid, said J. S. Stanley is now estopped and precluded from having or claiming any interest in or right to the said described live stock or the proceeds from the sale thereof, as against the plaintiff herein.

"Wherefore plaintiff prays judgment that the petition in intervention of said J. S. Stanley be dismissed, that said

J. S. Stanley take nothing, and said plaintiff recover his costs herein."

To which said answer intervenor, J. S. Stanley, on May 10, 1899, filed a general denial. On the same day, May 10, 1899, the cause was heard by the court upon the issues joined, and a decision was reserved until August 15, 1899, when the following judgment and decree was rendered:

"Now on this 15th day of August, A. D. 1899, the said cause having been heretofore submitted to the court upon the petition of intervention of J. S. Stanley and the amended answer of the plaintiff, and the reply of the intervenor to said amended answer, and the evidence in said cause, a jury herein having been expressly waived, and the court being now fully advised in the premises, finds generally in favor of the plaintiff and against the intervenor, J. S. Stanley, and the court finds that the said intervenor, J. S. Stanley, is estopped to claim any interest in and to the money and credits garnished on September 13, 1898, in the hands of J. A. Sonnamaker and John Smith ; and finds that the plaintiff is entitled to have the proceeds of said garnishment subjected to the payment of the judgment heretofore rendered in this cause in the November, 1898, term of this court, in favor of Robert Foote, plaintiff, and against J. M. Stanley, defendant ; and the court further finds that the bill of sale for the property in controversy, executed by J. M. Stanley, to J. S. Stanley, was executed in fraud of the creditors of the said J. M. Stanley, to each and all of which said findings the intervenor, J. S. Stanley, by his counsel, at the time excepted.

"It is therefore considered, ordered, adjudged and decreed by the court, that the intervenor, J. S. Stanley, take nothing by his intervention proceeding, and that the plaintiff, Robert Foote, have the proceeds of the property garnished and attached in this suit to the amount and extent necessary to satisfy his judgment herein ob-

tained against J. M. Stanley, and the costs in this proceeding, taxed at $ ———.

"It is further ordered and considered by the court, that the garnishee, J. A. Sonnamaker, forthwith execute and deliver to the clerk of this court his two certain promissory notes, each dated October 1, 1898, each for the sum of $282.50, with interest from date at the rate of eight per cent per annum, one due in one year after date, and one due in two years after date, payable to J. M. Stanley, or bearer, and upon his compliance with this order, the said J. A. Sonnamaker is decreed to be the owner of the S. T. brand, and all horses bearing said brand, wherever they may be found upon the range, being about seventy-four in number ; and this judgment shall stand in lieu of a bill of sale from the said J. M. Stanley to the said J. A. Sonnamaker, of said horses and brand.

"It is further ordered and adjudged that the clerk of this court out of the sum of one hundred dollars heretofore paid him in this cause, by said Sonnamaker, garnishee, shall pay, first, the unpaid costs in this action, and the balance to the plaintiff in this cause for credit upon the judgment herein.

"It is further ordered and decreed, that if the said J. M. Stanley and J. S. Stanley shall, within twenty days from the date of this decree, execute and deliver to the clerk of this court a bill of sale, conveying by title clear from incumbrance, the brand S. T., and the horses bearing the same, in Johnson County, Wyoming, about seventy-four, more or less, and shall pay to said clerk of the court the remaining unpaid balance upon the judgment and costs herein, then the clerk shall deliver to said J. S. Stanley the said notes of Sonnamaker, above described, and the judgment herein shall be released and fully satisfied, but in case the said J. M. Stanley and J. S. Stanley shall fail and neglect within the said twenty days to execute and deliver the bill of sale, as herein ordered, then this decree shall stand in lieu of, and as a bill of sale conveying to, J. A. Sonnamaker, from and on behalf of

Stanley Brothers, J. M. Stanley and J. S. Stanley, the S. T. brand, and all the horses bearing said brand, on the range in Johnson County, Wyoming, on October 1, 1898, and the clerk of this court shall pay the proceeds of the two notes heretofore mentioned, to the plaintiff, Robert Foote, until the judgment and costs in this action are fully paid, and shall pay the remainder of said proceeds, after said judgment and costs are fully paid, to J. S. Stanley, intervenor ; to each and all of which said orders, and to which said judgment the said J. S. Stanley, intervenor, by his counsel, at the time excepted.

" And the intervenor, by his counsel, now presents to the court his motion for a new trial herein, and the court being fully advised, doth overrule the same, to which ruling of the court the intervenor, by his counsel, now and here excepts.

" Thereupon, upon the application of the said intervenor, J. S. Stanley, the said intervenor is given until the first day of the next regular term of the district court in and for Johnson County, Wyoming, within which time to prepare and present to this court, or the judge thereof, his bill of exceptions herein, for its or his allowance.

" And thereupon, upon further application of the said intervenor, J. S. Stanley, it is ordered that the execution of the foregoing orders and judgment be stayed for twenty (20) days ; and it is further ordered that the execution of the foregoing orders and judgment be further stayed, if within said twenty days the said J. S. Stanley, intervenor, execute a good and sufficient undertaking in the sum of $1,000 with good and sufficient surety, to be approved by the clerk of this court, conditioned as by law required.

" It is further ordered that the foregoing judgment be entered of record by the clerk of said court, upon receipt of the same.

" Done in open court this 15th day of August, A. D. 1899.

" Joseph L. Stotts, Judge. '

Plaintiff in error contends: "That the judgment of the court is erroneous, and that the same should be reversed. The errors are so numerous that it would require a most extended brief to discuss them."

Defendant in error contends that the prayer in his answer to petition in intervention; viz., that petitioner take nothing and pay the costs of intervention, should have prevailed, as it appears to have done by a circuitous mode of determination. And it would seem needless to reiterate the statement that if the final judgment is found to be fully warranted by the law, the pleadings and the evidence in the case, it will not be disturbed in this court for mere irregularity of stating the same, or the mode or way in which it was finally arrived at.

We have carefully examined, not only the authorities cited by counsel, but many others, and have found many contentions made by plaintiff in error in line with claims made; as for instance, after a complete and adequate plea of estoppel, upon evidence being tendered in support thereof, the objection of plaintiff in error was sustained on the ground that such evidence was "incompetent, irrelevant, and immaterial." And one of the errors claimed here is that the judgment rendered was not supported by evidence so excluded.

Again, on the trial had upon the petition of intervention and answer, J. M. Stanley, the original defendant, against whom judgment was rendered upon a promissory note, and a brother of plaintiff in error, who intervened, testified as follows:

Q. What was your interest in the horses?

A. One half.

Q. Who owned the other half?

A. My brother, Albert Stanley.

Q. Was your brother Al. there when the deal was made?

A. Yes, sir, I think so. I think the two went up and rounded up the horses together."

Before that this witness had testified upon direct examination as follows:

Q. Counsel for plaintiff has asked you about an assessment of Stanley Brothers ; state who did the Stanley Brothers refer to on the assessment ?

A. It means J. S. Stanley and Albert Stanley.

Later on, this same witness gives the following testimony :

Q. Where is your brother, Al. Stanley ?

A. He is home.

Q. Where is that ?

A. Right out here, about half a mile, something like that.

J. S. Stanley, the intervenor, testifies as follows:

Q. You may state who owned the property out of which the proceeds arose, if any, which are now in the hands of Sonnamaker ?

A. I own the property.

Q. How long did you own the property ?

A. Since the fall of 1894.

Q. From whom did you purchase the property?

A. J. M. Stanley.

Q. The defendant in this action ?

A. Yes, sir.

The record fails to disclose any sale of the interest of Al. Stanley in the property to J. S. Stanley or any one else, if he had such interests ; nor was Al. Stanley given an opportunity to defend the same.

The above instances are referred to that the unsatisfactory condition of the record may be made to appear, and the correct application of a ruling made under like conditions, cited later on.

Counsel for plaintiff in error makes the following claim in their brief, page 10, which has much merit:

" Smith and Sonnamaker ( the garnishees ) were not parties to this action, and of course, could not take advantage of, nor be bound by, estoppel. It was immate-

rial to them who owned the stock or brand. It cost them no more, nor no less, whether J. M. Stanley or J. S. Stanley owned them.''

We deem it unnecessary to discuss further the briefs and record in this case that it may appear that the case of Vallette v. Kentucky Tr. Co. Bank, 2 Handy, is in point; and we will quote from said case at considerable length. The court says:

'' So far from it being necessary that the plaintiff, before he can obtain a judgment on his claim against the defendant, should have the fact ascertained that a garnishee has in his hands property belonging to, or is indebted to the defendant, the code provides, in Sections 218 and 219, that there shall be no final judgment against the garnishee, in the event of an action against him, until there has been a judgment against the defendant. If a garnishee fail to appear and answer, or if his answer be unsatisfactory, the plaintiff may at once proceed by an action against him for the amount of property or credits in his hands belonging to the defendant. The action against the defendant, 'and that against the garnishee, both proceed, but final judgment in the latter is not to be rendered until the former be determined. If the plaintiff succeeds, he may then proceed to a final judgment against the garnishee ; if he fail, the garnishee is to be discharged and recover costs. Code, Sections 218, 219.

''Such being the order of proceeding provided by law to ascertain whether the affidavit of the plaintiff, that the garnishee is indebted to the defendant, is sustained in point of fact, with what propriety can we, in a summary way, on an inquiry as to the regularity of the constructive service by publication, prejudge that question ?

'' The code of civil procedure has certainly made a radical change in the forms of judicial proceedings. But it is as important now as before, indeed, to prevent confusion in the working of a new system, it may be said to be more important, that the proceedings of courts shall take their orderly and defined course. We think that the

course prescribed by the code, to entitle the plaintiff to a judgment, has been pursued. He has commenced his civil action, in a case of which the court has jurisdiction, he has obtained an order of attachment, he has completed a service by publication, and offered the proof thereof required. The time for answer has expired, and the allegations in the petition have not been controverted by the defendants. The evidences of indebtedness stated in the petition have been produced to be filed or cancelled. The plaintiff, therefore, in the absence of any defense, must be considered as entitled to the judgment he has asked.

" We come next to the inquiry as to the facts or matters set up in defense. Before proceeding with this inquiry, it is proper to distinguish between the action and the provisional remedy, or auxiliary proceedings, to subject property or debts to the payment of the claim on which the action is founded. The action as stated in the petition, and the order of attachment issued upon an affidavit, though for some purpose directly connected and dependent on each other, in reference to other purposes, are carefully to be distinguished. This distinction is in no respect more obvious than in reference to the question of defense.

" From the very nature of the subject-matter there can, properly, be no defense to an order of attachment. When improperly, or wrongfully, issued, it may be discharged or set aside, on motion by the proper party, on a proper showing ; but it is in no respect a pleading to which an answer can be offered. If a third party claim the property affected by an order of attachment, it is made the duty of the sheriff to have the validity of such claim tried, in a speedy form of proceeding. If such party, whose rights of property are violated, does not desire to bring his claim to the notice of the sheriff, to have its validity tried, he is in no respect barred from the assertion of his claim in the ordinary legal forms provided for obtaining the possession of property, and redressing injuries sus-

tained.   To these remedies a claimant of the property should resort.

"The idea that a claim of a title to, or an interest in, the property attached, independent of any connection with the cause of action stated in the petition, will give the right to such claimant to appear and litigate with the plaintiff that cause of action, cannot, we think, be successfully maintained.   There may be cases in which the interest in the property attached, on the part of a third person, also involved an interest in the justice and amount of the claim of the plaintiff in attachment.   This appears to be the case with different attaching creditors.   For such a case the code probably intends to provide in Section 225, directing, where several attachments are executed on the same property, or the same persons are made garnishees, the court, on motion of any of the plaintiffs, may order a reference to ascertain and report the amounts and priorities of the several attachments.   We see no reason to doubt, that under such a reference an unjust or fraudulent claim might be reduced or postponed.   But a proceeding for that purpose, whether by a reference or an independent action, is quite different from allowing a third party to come into the action between the plaintiff and defendant, and defend the cause of action asserted by the plaintiff.   It is difficult to see how such a position can be allowed to any other person than the defendant himself, or some one standing toward him in a representative character.

"Upon any proper principle, it would appear to be sufficient for a plaintiff to establish his claim against the defendant and the property of the defendant.   If the claim so established conflicts with the claim of third persons, it is for them to attack and set aside, on proper grounds, the claim of the plaintiff.   They cannot be permitted, in view of a probable interference with their claims, to oppose an obstacle to the assertion of a claim on the part of another, which the party directly and immediately interested does not think proper to present.

"If these principles be generally correct, they operate still more forcibly under our present system of practice. A plaintiff is required to present his claim under the sanction of his oath as to its correctness. A denial of his allegations, or any matter set up to avoid their effect, is to be sustained by the oath of the defendant. What warrant have we to permit a third person only indirectly interested to assume in this particular the position of the defendant?

"Whenever it may be proper, therefore, for a person to question the validity or amount of a claim in litigation between other parties, he must proceed in some form with that view; he cannot be permitted to do it indirectly as a mere defendant to an action, with the cause of which he has no connection, his only interest being the possible effect of its determination upon some alleged right of his own. His position must necessarily be one of attack, and not simply of defense. His own right be set up in some affirmative shape, so that it may be met and controverted.

"Under these views, in the position of the pleadings, in this case, we might well decline to express any opinion as to any other matters involved. And, for the reasons before given, we do not think it proper that we should now decide any of the very interesting questions which have been argued as to the rights of the parties to the property and credits, in the hands of the garnishees. As we have already intimated, those questions will properly arise in actions by the plaintiff against the garnishees. The latter, certainly, who are parties interested, are not now before the court for the determination of those questions. In the position in which they now stand, our decision, if made, would not be obligatory on them or on the property in their hands. Some of the garnishees have not answered; others have answered, but only as garnishees, or under the oath of attachment, and not in the action. No issue has been or can be made on those answers. In an action brought by the plaintiff against the garnishees, or by a claimant of the property for its

recovery, or to assert his rights, the proper parties may be made and the questions presented ; but, in our opinion, they do not arise, and it would be improper that they should be decided.''

This opinion was rendered in May, 1855, and by reason of subsequent revision the sections of the statutes of Ohio were changed. Section 218 became Sections 5551 and 5552, and are our Sections 4018 and 4019. Section 219 became Section 5553, and is our Section 4020, and Section 225 became Section 5559, and is our Section 4026.

Whether or not a party may intervene, when a claim is made to the ownership of the subject-matter of the suit, is not here to be considered, as the subject-matter in this case at bar is a promissory note in which plaintiff in error as intervenor claims no interest. In the case of Risher, et al. v. Gilpin, et al., 29 Ind., 53, we find the following discussion of the question here being considered, and we quote :

"The first error assigned is' upon the ruling of the court in admitting Bennett and Love to appear as defendants in the attachment proceedings. Such proceedings were unknown to the common law. They are authorized alone by statute, and hence we can only look to that source in determining what proceedings may be had, or who may be made parties thereto. Looking to the provision of our statute on the subject, we find nothing to authorize the claimant of property attached, in a suit against another party, to become a defendant in the attachment ; but, on the contrary, it is provided by Section 169 of the code (2 G. & H., 143) that 'whenever any person other than the defendant shall claim any property attached, the right of property may be tried, as in cases of property taken in execution, and the claimant, having notice of the attachment, shall be bound to prosecute his claim, as in such cases, or be barred of his right.' This provision evidently contemplates an original suit, or proceeding instituted by the claimant to try the right of property. But the appellees' counsel insist

that the remedy provided by the statute for a claimant of property attached, by virtue of process against another person, is applicable only in cases where the process is issued by a justice of the peace, and refers to the act on that subject in 2 G. & H. 632. But Section 128 of the code (2 G. & H., 127), under the title of 'claim and delivery of personal property,' provides that 'when any personal goods are wrongfully taken, or unlawfully detained from the owner or person claiming the possession thereof, or when taken on execution or attachment, are claimed by any person, other than the defendant, the owner or claimant may bring an action for the possession thereof.' But it is argued that this statute neither confers a new right nor provides a new remedy. Be it so, and still the argument proves nothing. The remedy provided, whether new or old, is an ample one for the trial of the right of property in such cases, and is certainly not inconsistent with that contemplated by Section 169 of the code."

In equity, although no one is entitled to be made or become a party to the suit who has not an interest in its object, it is the usual practice to permit strangers to the litigation who claim an interest in the subject-matter, to intervene and assert their title on their own behalf. 11 Ency. Plead. and Prac., 496.

Many States by statute have provided that any person claiming the property attached, can come in and have his rights determined.

The code of California provides, "Any person may, before the trial, intervene, in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties or an interest against both." Code Civ. Pro., Sec. 387. Colorado has the same provision (Sec. 22).

The code of Iowa provides that : "Any person other than the defendant may, before the payment to the plaintiff of the proceeds of any attached debt, present his petition verified by oath to the court, stating a claim to the prop-

erty or money, or to an interest in or lien on it, under any other attachment or otherwise, and setting forth the facts upon which claim is founded." Sec. 3237 of the Revision; Sec. 3016 of the code. Minnesota has a code provision in part as follows : " Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against either or both, may become a party to any action or proceeding between other parties, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, or either of them, either before or after issue has been joined in the cause, and before the trial commences. The court shall determine upon the issues made by the intervention at the same time that the issue in the main issue is decided, and the intervenor has no right to delay." Gen. St. 1878, C. 66, Sec. 131.

The above section contains in substance the same provision as the statutes of Louisiana, so far as it relates to intervention. We might cite statutes of Georgia, Illinois, Kansas, Maryland, Massachusetts, Missouri, New Hampshire, Rhode Island, and Texas, where provision is made for intervention by one not having an interest in the cause of action. Wyoming has no such statute, but on the contrary seems to be bound by the construction placed upon the statute in the case of Vallett v. Kentucky Trust Co. Bank, *supra*, prior to the adoption of the same statute by Wyoming, and cited by Mr. Whittaker in his Ohio Annotated Code in a note to Sec. 5553; and we are unable to find that such construction had or has been qualified.

The record in this case shows that defendant in error, Robert Foote, made the contention, that plaintiff in error, J. S. Stanley, ought not to be allowed to maintain any standing in this case. We find on page 22 of the record the following objection : " By Mr. Fisher,— The plaintiff objects at this time to the taking of the testimony upon

the petition in intervention for the reason that the case having been decided upon its merits, the court has not now jurisdiction to try any issue arising by intervention." And later, after the first witness had been sworn the following: "By Mr. Fisher,— The plaintiff demurs orally to the petition of intervention, and objects to the taking of any testimony thereunder, for the reason that the petition in intervention does not state facts sufficient to entitle the intervenor to come into this case; the case having been disposed of on its merits, the court is without jurisdiction thereunder." Both objections were overruled. Under our system of practice an execution cannot issue against a garnishee in the original action. Should he refuse to comply with an order of court to pay money into court, as well as when the answer is unsatisfactory, or the garnishee fails to appear, the plaintiff may proceed against the garnishee by action. Stat., Sec. 4018. In such an action, should one be brought, a claimant to the money would no doubt have a right to intervene under the provisions of Section 3480, which reads as follows : "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of the question involved therein." See Chilcote v. Conley, 36 O. St., 545.

But there is no authority for the intervention in the original action by a claimant to money garnisheed or property attached in such action. A garnishee can always protect himself if when he answers he knows a person other than the defendant claims the money by so stating. The judgment of August 15, 1899, so far as it was given against the intervenor for costs, was to that extent proper, for the reason that the intervention in this suit was unauthorized by law, and that part of the order denying the intervenor's motion for a new trial, was for the same reason proper. But it (the judgment for costs against J. S. Stanley) should have followed an order dismissing his petition of intervention, and no judgment should

have been rendered attempting to adjudicate his alleged rights to the property or money attached.

The cause will, therefore, be remanded, with directions to the district court to modify its said judgment of August 15, 1899, accordingly, and when so modified, should order a dismissal of the intervention proceedings, and embrace such order as to the payment and time of payment of the money attached in the hands of the garnishee, or so much thereof as may be necessary for the extinguishment of plaintiff's claim and costs, as the rights of the original parties to the suit, and the answer of the garnishee require. The costs of the proceedings in this court will be taxed against the plaintiff in error.

*Judgment Modified.*

POTTER, C. J., and CORN, J., concur.