NEIDERJOHN v. THOMPSON, ET AL.
(No. 1395; February 28, 1928; 264 Pac. 699)

30

*Mentzer & Pickett,* for appellants.

*Arnold* and *Arnold,* for respondent.

34

*Mentzer & Pickett,* in reply.

*C. P. Arnold,* answering reply brief.

Brown, District Judge.

This suit was brought by R. K. Neiderjohn, Receiver of the First National Bank of Rock River, Wyoming, against H. A. Thompson. The petition sets forth two causes of action. The first to recover the statutory liability of the defendant on fifty shares of the capital stock held by him of the First National Bank of Rock River, Wyoming, at the time it closed its doors; the second on a note given by him to that institution. Plaintiff caused a writ of attachment to issue and served notices of garnishment upon defendant H. A. Thompson, Rock River Mercantile Company, of which company defendant was president and general manager, and upon G. R. McConnell. McConnell answered as garnishee that he held 240 shares of the capital stock of the Rock River Mercantile Company belonging to defendant H. A. Thompson. Defendant in his answer denied that he was indebted to plaintiff. The trial resulted in a judgment in favor of plaintiff. A few days before judgment, F. C. Thompson, a brother of H. A. Thompson, asked to be permitted to intervene in this suit, alleging that he held the 240 shares of capital stock of the Rock River Mercantile Company as collateral security to a note held by him against the defendant H. A. Thompson. In his petition intervener also attacked the garnishment proceedings. He was permitted to intervene without objection. Issue was joined on this petition and trial had. Judgment was rendered in favor of plaintiff, Neiderjohn, and against the intervener, F. C. Thompson. H. A. Thompson did not institute an appeal or any error proceedings from the judgment in the main case. F. C. Thompson appeals from the judgment against him. In this judgment against the intervener, F. C. Thompson, the following language appears, "the court finds in favor of the plaintiff and against the defendant H. A. Thompson and the intervener F. C. Thompson." Both are given an exception to the ruling.

The intervener in his specifications of error sets up some forty-two rulings of the trial court which he now urges as

error. The record is somewhat voluminous and the briefs are long. While we have read the record and briefs and carefully considered each point raised as error, we think it unnecessary to attempt to discuss all of the errors specified in the brief.

As stated above, H. A. Thompson did not appeal from the judgment in the main case. He is, however, attempting to unite with F. C. Thompson in his appeal and therein objecting to the validity of the garnishment proceedings. This we think he cannot do. The intervener was opposed to both the plaintiff and defendant in his petition of intervention. H. A. Thompson is not a party to the contest between the intervener and the plaintiff by virtue of being the defendant in the main case, and was not made a party in the pleadings between them. The judgments in the main case and in the intervention case were separate and distinct. The former was rendered fourteen months before the latter. His name, therefore, in the judgment against the intervenor is surplusage. We think therefore that H. A. Thompson waived any irregularity in the attachment and garnishment proceedings and that having failed to bring the judgment against him in the main action into this court for review he cannot now be heard on any of the matters settled by that judgment.

F. C. Thompson came into this action as intervener without objection a few days before judgment in the main case was rendered. The rule established by this court in Stanley v. Foot, 9 Wyo. 335, 63 Pac. 940, is: ''A claimant to money garnished, or property attached in an action between other parties cannot intervene in the action for the purpose of having his rights thereto determined.'' What effect, if any, the repeal of Sections 4766 and 4768, Wyoming Compiled Statutes 1910, by Chapter 111, Session Laws 1915, may have upon that rule we need not now determine. Apparently all parties were anxious for a speedy determination of the various claims of the parties concerned, and no objection was interposed to the intervention suit. Even

though the intervention suit may have been improper, yet since there was no objection, the court could properly determine the issues thereby raised. Schloredt v. Boyden, 9 Wyo. 392, 64 Pac. 225.

The intervener claimed to hold the stock garnished as collateral security to a note he held against H. A. Thompson. The trial court found against him on this issue of fact. The evidence is too long for us to give it more than a cursory examination. We have, however, carefully considered it in detail. The intervener F. C. Thompson lived in Iowa. He was the owner of a mercantile business in a small town of 280 inhabitants. He did business through a bank there. He had at one time sent money to his brother here by bank draft. He was paying interest on a loan on a small farm he owned. He sold liberty bonds to buy a stock of hardware. Yet he claimed to have loaned his brother H. A. Thompson $13,500.00 on two occasions; $10,000.00 on the first occasion and $3500.00 on the second occasion, and to have carried this money in currency in a money belt to Wyoming, having accumulated it in his business, hoarding it in a small safe in his bed room. H. A. Thompson on receiving the money, though doing business through the First National Bank of Rock River, and himself being the cashier of that bank, placed it in his safe instead of depositing it with the bank. He borrowed it to purchase stock of dissatisfied stockholders of the Rock River Mercantile Company, yet he had borrowed money from other sources and purchased all of this stock that he ever purchased, before he borrowed from his brother. He loaned most of this money to the Mercantile Company of which he was president and general manager, without the knowledge of any other officer, in little sums as the company needed it, yet the company's bank account failed to reflect the transaction. He failed to mention the obligation to his brother in a financial statement shortly before the bank failed, made for the purpose of obtaining credit. He was a witness in the criminal trial of Lewis C. Butler and testi-

fied that he owned 95 per cent of the stock of the Rock River Mercantile Company, which included the 240 shares in question, without mentioning the lien of his brother. In the answer of the Rock River Mercantile Company as garnishee he does not disclose the lien of F. C. Thompson. F. C. Thompson made no claim to a lien on this stock until more than a year after it was garnished and just before judgment in the main action. Whenever the story told by these brothers came in contact with written records, these records contradicted the story. It was corroborated by no independent evidence. There are so many contradictions in this testimony and the story told is so unreasonable when compared with present day business methods, that we think the judgment of the lower court thereon should not be disturbed.

The intervener objected to several irregularities in the garnishment proceedings. This we think he cannot do. It has been held that the intervener must first establish his ownership or interest in the property in question, and failing in that he has no further interest in the controversy. In 28 C. J. 381, we find the following: "But generally the claimant must rely upon the strength of his own right or title and not upon the weakness of defendant's title, nor upon the weakness of, or irregularities in, plaintiff's proceedings, either in the main action or in the proceedings against the garnishee." In the case of Hewitt v. Follett, 51 Wis. 264, 8 N. W. 177, the court said:

"After the appellant (intervener) became a party to the action, so far as she and plaintiff were concerned it became an action between them and them alone. The question which they were to litigate was the question whether she or they, as judgment creditors of her husband, were entitled to the money due from the garnishee. In the regular order of proceedings this issue should have been first tried, because the determination, of such issue would have ended all the rights of appellant in the case." N. A. Kennedy Butter Tub Co. v. First & Hamilton National Bank, (Kan.) 222 Pac. 754.

There is another reason why we think the intervener cannot question the regularity of the garnishment proceedings. He voluntarily came into the case asking that the court declare his claim to be a first lien upon the stock garnished. There is authority to the effect that one who voluntarily submits himself to the jurisdiction of the court having general jurisdiction of that class of cases, and asks relief with respect to the subject matter in controversy, cannot thereafter object to the regularity of the proceeding by which the court obtained jurisdiction over the subject of the action.

In N. A. Kennedy Butter Tub Co. v. First & Hamilton National Bank, supra, the court says:

"One who voluntarily submits himself to the jurisdiction of the court cannot thereafter question such jurisdiction. The interpleader came in voluntarily and asked the court to find that its lien on the funds garnished was superior to that of plaintiff. It prayed that the garnishee be ordered to pay such funds to it and that if the garnishee failed to do so, that it have judgment against the garnishee. The acknowledgment that the funds in the hands of the Hauber Cooperage Company had been garnished, and that the court had authority to order such funds paid to the interpleader, was tantamount to an admission that plaintiff's proceedings were not void and that the court had jurisdiction. Having entered its voluntary appearance and itself appealed to the general jurisdiction of the court for an affirmative order beneficial to itself, the interpleader is in no position to now assert that the proceedings were void." (Citing many cases).

"But where the court possesses jurisdiction of the general class of cases to which a particular suit belongs, it will acquire jurisdiction over the subject matter on the parties voluntarily coming before the court, the one demanding relief, the other defending." 4 C. J. 1349.

The syllabus in Ragan v. Morrill, et al., 43 Neb. 361, 61 N. W. 590, reads:

"The question whether or not the district court has jurisdiction of the subject of the action and of his person cannot be raised by one who, in respect to such subject has voluntarily appeared and presented his claim by proper pleadings for adjudication by such Court."

In Re Reccommi Estate, 185 Cal. 458, 197 Pac. 97, 14 A. L. R. 509; State ex rel. Cameron, et al. v. District Court, 48 Nev. 198, 228 Pac. 617.

At the close of the testimony the plaintiff asked and was granted leave by the court to amend his answer to the petition of the intervener by adding thereto the allegations stated below for the ostensible purpose of making the answer conform to the evidence. This ruling of the trial court is now urged as error in that it introduced a new defense. The answer as it originally was filed was a general denial, and the additional allegation that the cause of action set up by the intervener arose before (after) the levy of the attachment writ, and that the claim set up to the property by said intervener could not, in law or in fact, be asserted against the plaintiff. To this answer the amendment added the following:

"Plaintiff states that the claim of the intervening petitioner is a fraudulent claim and made for the purpose of defeating creditors, and that said claim casts a cloud upon the title or right which plaintiff has acquired by attaching the stock of the defendant H. A. Thompson and therefore the plaintiff prays that the said claim of F. C. Thompson be declared null and void and that the said F. C. Thompson be declared not to be the owner of the stock and that the said stock be sold as on execution and the proceeds applied on plaintiff's judgment against H. A. Thompson."

We think the amendment did not materially change the issue originally raised by the pleadings. The intervener was attempting to establish a prior lien upon the stock in question. This was being contested by plaintiff. If trial had proceeded to judgment on the issues as originally framed the court would necessarily have had to determine

whose lien was a prior one. At the time the amendment was offered, intervener had failed to establish his lien and judgment at that time would have settled, adversely, his claim.

After the taking of evidence was concluded the intervener attempted to dismiss his petition in intervention without prejudice. This was denied by the court and is now relied upon as error. The intervener's contention is that in the intervention suit he stands in the character of plaintiff in an ordinary action and that under Section 5879, C. S. 1920, he may dismiss at pleasure at any time before the case is submitted to the court or jury. It cannot be doubted that under Section 5879, the general rule is that the plaintiff may dismiss his action at any time before the case is at an end, but in case a counter-claim or set-off has been filed, the court can proceed to hear and determine the questions arising under the counter-claim or set-off. Sec. 5880. And there may be circumstances that will qualify the rule in a particular case, and we think that is true here. 18 C. J. 1149, Sec. 7.

The only issue between the parties was as to whose lien was a prior lien to the stock in question. It has generally been held that where the court has been called upon to settle conflicting property rights between parties, as where defendant by his answer claims a superior right in the property to that of plaintiff and asks that he be declared to be the owner thereof, or to hold a superior right therein to the plaintiff, that this answer constitutes a counterclaim and that in such case plaintiff cannot dismiss. Thus in the case of Sauter v. Bank, 8 Fed. (2d) 121, 123, the court says:

"It is apparent that appellant was making definite claim of his ownership of the stock upon which the bank asserted its lien, through the loan made to Armstrong upon the security of the stock certificate which Armstrong delivered to it, one need but to examine appellant's bill to know that his assertion of title in himself to the exclusion of the bank's lien was thus definitely and formally put forth. Such an undertaking is of necessity more or less influential

in beclouding the title to the property, and it conferred upon the bank the right to proceed in equity against the appellant to have determined and settled the validity of the claim thus made. This would constitute a right of action by appellee bank against appellant which in our judgment would bring it within the purview of rule 30. In our view under the facts set up in the pleadings, the undertaking to foreclose the bank's lien directly involved the question of superiority of title to the shares of stock as between appellant and appellee bank, and in foreclosing its lien, the bank may properly have as an incident thereto, the affirmative relief against appellant which it might have had if appellant had been made defendant in a suit in equity by the bank to obtain against him similar relief. Regarding the bank's pleading as properly a cross bill or counter-claim under the rule, was appellant entitled upon his motion, opposed by appellee bank, to have his bill dismissed without prejudice? * * * It has been recently stated in ex parte Skinner & Eddy Corp., 265 U. S. 86, 44 S. C. 446, 68 L. Ed. 912, 'It is ordinarily the undisputed right of a plaintiff to dismiss a bill in equity before final hearing. * * * The right to dismiss if it exists is absolute. * * * The usual ground for denying a complainant in equity the right to dismiss his bill without prejudice at his own costs is that the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief, and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree.''

In State v. Hastings, 130 Wash. 283, 207 Pac. 23, where the relators in three cases heard together sought writs of mandamus to compel the mayor and councilmen of Port Townsend to levy taxes upon the taxable property of the city to pay certain indebtedness of the city held by relators, the trial court in one of the cases granted a voluntary nonsuit as to some of the city warrants. The court says:

"Relator Weldrick by his complaint and application for mandamus sought relief looking to the payment of those warrants upon the same ground as he sought relief looking

to the payment of his other indebtedness, warrants involved in his case. The affirmative answer of the mayor and council pleaded the invalidity of the Franklin Savings Bank judgment and those warrants issued in payment thereof, * * * and prayed that all of the said indebtedness fund warrants mentioned and described in said application be declared fraudulent and void. * * * In this state of the pleadings and this affirmative relief asked for by the mayor and council in behalf of the city, they had a right to an affirmative judgment decreeing these Franklin Savings Bank warrants to be void and constituting no obligation as an indebtedness against the city, * * *. We conclude that the superior court erred in awarding to Weldrick the voluntary nonsuit." 207 Pac. 33-34.

The syllabus in Phares v. Don Carlos, 74 Colo. 356, 221 Pac. 883, reads:

"Defendant in a suit to quiet title, by his answer setting up an interest in the land under conflict between the parties, a claim which he is entitled to have adjudicated, plaintiff may not dismiss especially after all rights of the parties had been settled and determined on appeal, except the question of damages, if any, to plaintiff, for trial of which the case was remanded." Subera v. Jones, 108 N. W. 26.

In Kruger v. Parsons, 52 App. Div. 50, 64 N. Y. Supp. 841, 7 N. Y. Ann. Cas. 426, the court held that an application to dismiss an action was addressed to the legal and not the arbitrary discretion of the court, and generally speaking a plaintiff was entitled to an order of discontinuance as a matter of course. The rule, however, was not without its exceptions and where the court could see that it would be unjust or highly prejudicial to the interests of the defendant it could refuse to allow the discontinuance, and citing and quoting from Winans v. Winans, 124 N. Y. 140, 26 N. E. 293, the court said:

"In short the rule as stated in the case last cited will justify the right to refuse leave whenever circumstances exist which afford a basis for the exercise of legal discretion."

The defendants in Kruger v. Parsons were receivers of a corporation. Quoting again from that opinion,

"This procedure upon the part of the plaintiff (in applying to dismiss without prejudice), plainly indicated either an attempt to annoy and harrass, or an effort to obtain priority over other creditors. * * * In either case the inevitable result of plaintiff's course will be to embarrass the receivers in their effort to execute their trust which the court imposed upon them and to impair the trust fund to the prejudice of the rights of a large number of creditors."

A receiver is ordinarily a court officer, appointed by the court to collect and distribute, under supervision of the court, to the creditors of the defunct institution, its assets as economically and expeditiously as possible. Ordinarily he cannot be sued without the consent of the court appointing him. De Forest v. Coffey, Judge, 154 Calif. 144, 98 Pac. 27, was a mandamus action to compel the respondent, judge of the superior court, to make an order granting leave to petitioner to sue a receiver in an independent action. The court held that it was within the discretion of the court appointing a receiver to compel all claimants to file a petition in the nature of intervention in the original action or permit an independent action. It was held in McNeal Machinery Co. v. Empire Brick & Gas Co., 85 Kans. 277, 116 Pac. 501, that it was within the discretion of the court to withdraw or cancel leave given to sue a receiver even though the inevitable result is the dismissal of the action against the receiver. The court is bound to protect a receiver against useless litigation. In the case at bar, the court had heard all of the evidence. The intervener had failed to establish his claim. There was no reason to believe that other or more convincing evidence would be produced on another trial. The case already had been pending for more than two years. The only object in dismissing the petition of intervener without prejudice would be to bring another action, either against the receiver, or against

the sheriff who sold the stock. In either event the burden of the action would fall upon the receiver. It is true that the receiver was not an officer of the court who heard the case, yet we think the court did not err in protecting him against further litigation of the question.

It follows that the judgment of the lower court should be affirmed.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.