STACEY-VORWERK CO. v. C. L. BUCK; STOCK GROW-
ERS NATIONAL BANK OF CHEYENNE, WYOMING,
GARNISHEE, AND FARMERS & MERCHANTS
BANK OF INDEPENDENCE, INTERPLEADER.
(No. 1640; Sept. 23, 1930; 291 Pac. 809)

For the plaintiff and appellant there was a brief by *W. Q. Phelan* and *John F. Delaney,* of Cheyenne, Wyoming, and oral argument by *Mr. Phelan* and *Mr. Delaney.*

For the respondent there was a brief by *Kinkead & Pearson,* and oral argument by *W. C. Kinkead.*

KIMBALL, Justice.

April 21, 1928, plaintiff, a corporation engaged in the wholesale fruit and produce business at Cheyenne, Wyoming, bought of defendant of Amite, Louisiana, 684 crates of strawberries for the agreed price of $2325.

On the evening of April 21 the berries were shipped from Amite by express consigned to plaintiff at Cheyenne. April 23 the Stock Growers National Bank of Cheyenne, at plaintiff's request, telegraphed the Farmers and Merchants Bank of Independence, Louisiana, that the Stock Growers bank guaranteed payment of draft on plaintiff for $2325 covering "car IC-4363 strawberries," the shipment in question.

After receiving this telegram, the Farmers and Merchants bank paid to defendant the sum of $2325 and took therefor a draft drawn by defendant on plaintiff for the amount, payable on demand to the order of the Farmers

and Merchants bank. The draft contained the recital, "covering invoice car IC-4363 contents 684 crts stberries," and attached to the draft was the express receipt for the shipment. This transaction was completed not later than April 25—probably April 24. The draft with the attached express receipt was then sent for collection to the Stock Growers bank by whom it was received about April 29.

The berries were received at Cheyenne and there delivered to the plaintiff on April 24. It may be granted, as plaintiff contends, that many of the berries, when delivered, were unfit for consumption or sale, and plaintiff took proper steps to minimize its damage by disposing of the marketable berries to the best advantage. It may be granted also that the evidence showed that the defective condition of a part of the berries was the fault of defendant, and a breach of an implied warranty.

The plaintiff promptly complained to the broker in Denver who had placed the order for the berries. What the broker did in carrying the complaint to defendant was not shown. Plaintiff on May 7 complained also to the Farmers and Merchants bank by a telegram referring to the draft on which plaintiff was withholding payment; stating the claimed facts as to the condition of the berries and plaintiff's damage, and urging that the bank, "as agent for" defendant, should make an effort to adjust the matter. There was no evidence that the bank, before the receipt of this telegram, had any information as to the condition of the berries, and the statement in the telegram that the bank was acting as agent for defendant was not proved.

On May 12, following, plaintiff paid the amount of the draft to the Stock Growers bank, and at once commenced this action against defendant for recovery of $700, claimed as damages caused by defendant's breach of its warranty of the quality of the berries. A writ of attachment was

issued, and the Stock Growers bank, holding the money collected on the draft, was summoned as garnishee. The defendant was served with summons outside the state, but never appeared.

In its amended answer as garnishee, the Stock Growers bank alleged the receipt of the draft from the Farmers and Merchants bank; its payment on May 12 by plaintiff; the remittance to the Farmers and Merchants bank of the proceeds of the draft except $750, which, the garnishee alleged, was claimed by the Farmers and Merchants bank, but retained by the garnishee because it was uncertain whether the money was owed to the payee of the draft or the defendant in attachment. On the filing of this answer, the court ordered the Farmers and Merchants bank to appear in the action and assert or defend its claim to the money in the hands of the garnishee. In obedience to that order, the Farmers and Merchants bank appeared and filed a pleading claiming the money as proceeds of the draft. To that pleading, the plaintiff filed an answer. On the issues so raised, the court found that the money was owed to the Farmers and Merchants bank, hereinafter sometimes called the interpleader, and not subject to attachment as the property of defendant. By the judgment, the garnishment was discharged, and plaintiff's action against defendant dismissed without prejudice. The plaintiff appeals.

The plaintiff in its brief filed in this court contends, for the first time, that the trial court had no authority to permit the "intervention" of the Farmers and Merchants bank, and no jurisdiction to try its claim to the attached money. Plaintiff relies on Stanley v. Foote, 9 Wyo. 335, 63 Pac. 940, in which it was held, as stated in the syllabus, that "a claimant to money garnished or property attached in an action between other parties, cannot intervene in the action for the purpose of having his rights thereto de-

termined." Counsel for the interpleader contend that the principle announced in Stanley v. Foote has no application where the claimant to the money comes into the case pursuant to an order of court as in the case at bar. That point we need not decide. We may assume that, if proper objection had been made, the interpleader would have had no right to appear in the case for the purpose of asserting its claim to the garnished money. But it is not a jurisdictional question. When, as in the case at bar, there is no objection to the appearance of the claimant nor to the litigation of his claim, the court has jurisdiction to determine the issues raised. Neiderjohn v. Thompson, 38 Wyo. 28, 39, 264 Pac. 699; Schloredt v. Boyden, 9 Wyo. 392, 403, 64 Pac. 225.

The evidence leaves no room for doubt that, as between the interpleader and defendant, the interpleader was entitled to the money held by the garnishee. The interpleader owned the draft for which in good faith it had paid to defendant the full amount called for. In demanding and receiving payment from plaintiff, the interpleader was not acting as agent for, nor in collusion with, the defendant. These facts are undisputed, or, if disputed, settled by the decision of the trial court.

The money being owed to the interpleader, the plaintiff could not hold it for satisfaction of damages caused by defendant's breach of warranty, unless it were shown that the interpleader had in some way assumed defendant's liabilities on the contract of sale. Williston on Sales (2 Ed.) Sec. 435.

There was attached to the draft the express receipt showing the shipment of the berries by defendant as consignor to the plaintiff as consignee. The shipment was interstate, and the express receipt, which was a nonnegotiable or "straight" bill of lading, was governed by the Federal Bills of Lading Act of Aug. 29, 1916 (39 Stat at L. 539; U. S. C. A. T. 49, c. 4). That act, by Section 29,

provides that a straight bill of lading "can not be nego-
tiated free from existing equities," and, by Section 34,
that a person who transfers for value a bill of lading by
endorsement or delivery, unless a contrary intention ap-
pears, warrants, among other things, that "the goods are
merchantable or fit for a particular purpose whenever
such warranties would have been implied if the contract
of the parties had been to transfer without a bill the goods
represented thereby." Plaintiff contends that, because the
draft had attached to it a straight bill of lading that could
not be negotiated free from existing equities, the inter-
pleader became liable under the Federal Act for the de-
fendant's breach of warranty of the quality of the berries.
In other words, that interpleader, in purchasing and col-
lecting the draft to which a straight bill of lading was
attached, assumed the defendant's liabilities on the con-
tract of sale of the goods mentioned in the bill of lading.

The contention cannot be sustained. Plaintiff disregards
Section 36 of the Federal Act (copied from Section 37 of
the Uniform Bills of Lading Act), providing that:

"A mortgagee or pledgee or other holder of a bill for
security who in good faith demands or receives payment
of the debt for which such bill is security, whether from a
party to a draft drawn for such debt or from any other
person, shall not be deemed by so doing to represent or
warrant the genuineness of such bill or the quantity or
quality of the goods therein described."

See comment on interpretation of this section in connec-
tion with Section 34, supra (Sec. 35 of Uniform Act) by
Professor Williston, draftsman of the Uniform Act. 26
Columbia L. Rev. 330.

Before the framing of these bills of lading statutes,
there had been decisions, commencing with Landa v. Lat-
tin, 19 Tex. Civ. App. 246, 46 S. W. 48, imposing on the
purchaser of a draft with bill of lading attached a liability

to the drawee who paid the draft, for breach by the seller of his warranty or contract in regard to the goods described in the bill of lading. The doctrine of these decisions, most of which have been overruled, was not only opposed to principles established by other well considered cases, but often denounced as likely to produce hardship in its practical application. S. Blaisdell, Jr. Co. v. Citizens Nat. Bank, 96 Tex. 626, 75 S. W. 292, 62 L. R. A. 968; Mason v. Nelson, 148 N. C. 492, 62 S. E. 625, 128 A. S. R. 635, 18 L. R. A. (N. S.) 1121; Cosmos Cotton v. First Nat. Bank, 171 Ala. 392, 54 So. 621, 32 L. R. A. (N. S.) 1173; First Nat. Bank v. Burkham, 32 Mich. 328; Goetz v. Bank of Kansas City, 119 U. S. 551; Central Merc. Co. v. Okla. State Bank, 83 Kan. 504, 112 Pac. 114; Bank of Italy v. Colla, 118 Oh. St. 459, 161 N. E. 330.

Section 36, supra, of the Federal Bills of Lading Act, adopting the language of the similar section of the Uniform Act, was evidently intended to make plain the legislative disapproval of the doctrine of Landa v. Lattin. See Commissioners' Note to Sec. 37 of the Uniform Act. The Federal Act has been given this effect in Mississippi in respect to an interstate shipment (First Nat. Bank v. Tchula Com. Co., 132 Miss. 58, 95 So. 742), though, apparently, the earlier Mississippi case of Searles v. Smith Grain Co., 80 Miss. 688, 32 So. 287, which followed Landa v. Lattin, supra, has not been overruled.

When the demand draft was paid, the interpleader was in at least as good a position as the payee in case of the unqualified acceptance of a time draft. Central Merc. Co. v. Okla. State Bank, supra; Williams v. National Fruit Exchange, 95 Conn. 300, 111 Atl. 197. After an unqualified acceptance, the payee's rights are not affected by questions of consideration between the acceptor and drawer. Hoffman & Co. v. Bank of Milwaukee, 12 Wall. 181.

Plaintiff cites Quality Shingle Co. v. Old Oregon etc. Co., 110 Wash. 60, 187 Pac. 705; Tennessee Egg Co. v.

Monroe, 151 Tenn. 121, 268 S. W. 372, and other cases, holding that the assignee of a straight bill of lading stands in the shoes of his assignor. But these cases arose from controversies in which the assignee of the bill of lading was claiming the shipped goods or a right to control the shipment. The retention by the seller of a straight bill of lading is ordinarily useless. The buyer does not need the bill to get the goods. Williston on Sales (2d Ed.) Sec. 285. It is not surprising, therefore, that in the cases to which we must look for authority, the bills of lading attached to the drafts were order, or negotiable, bills. We do not think the buyer of the goods can claim any greater right to the proceeds of the draft when the attached bill of lading is non-negotiable. The payee of the draft, to show his right to retain the proceeds, does not have to prove that the delivery to him of the bill of lading gave him a right to the goods. The delivery of the straight bill of lading to the interpleader in the case at bar probably served no purpose except to show the transaction that gave rise to the draft, and that was also shown by the recital in the draft itself.

The judgment of the trial court will be affirmed.

*Affirmed.*

BLUME, Ch. J., and RINER, J., concur.